RENDERED: MARCH 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0608-MR

JERRY HORN                                            APPELLANT

            APPEAL FROM BOONE CIRCUIT COURT
v.        HONORABLE RICHARD A. BRUEGGEMANN, JUDGE
                  ACTION NO. 22-CR-00194

COMMONWEALTH OF KENTUCKY                    APPELLEE

AND NO. 2023-CA-0609-MR

JERRY HORN                                            APPELLANT

            APPEAL FROM BOONE CIRCUIT COURT
v.        HONORABLE RICHARD A. BRUEGGEMANN, JUDGE
                  ACTION NO. 22-CR-00703

COMMONWEALTH OF KENTUCKY                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ECKERLE, A. JONES, AND TAYLOR, JUDGES.

JONES, A., JUDGE: On May 16, 2023, the Boone Circuit Court entered a judgment sentencing Jerry Horn consistently with a plea agreement Horn had entered with the Commonwealth: In exchange for the dismissal of the sole count of Horn's indictment in No. 22-CR-00194 (*i.e.*, strangulation in the first degree, a Class C felony[1]), Horn had agreed to plead guilty and serve two years' imprisonment for the sole count of his indictment in No. 22-CR-00703 (*i.e.*, bail jumping in the first degree[2]), with credit for time spent in custody prior to the commencement of sentence.[3]

Prior to sentencing, however, Horn made an unsuccessful attempt to withdraw his guilty plea based upon what he regarded as ineffective assistance from his *trial counsel*. In support of his motion, Horn, by and through different and subsequently appointed *conflict counsel*, provided the following reasons: (1) he believed he would not have been charged with bail jumping in the first degree if

---

[1] *See* Kentucky Revised Statute (KRS) 508.170.

[2] *See* KRS 520.070.

[3] As of May 16, 2023, Horn had already spent approximately one year in custody. This indicates Horn may well have fully served his sentence by now.

-2-

he had not been represented by trial counsel from the Department of Public Advocacy; (2) he believed, when he accepted the plea agreement, that he was going to be tried for bail jumping and strangulation in a single trial, and that an acquittal of the strangulation charge would have voided the bail jumping charge; and (3) he felt pressured into accepting the plea agreement because, shortly before he had accepted it, his appointed counsel may or may not have told him he had "admitted to guilt."

As indicated, Horn's attempt to withdraw his guilty plea was unsuccessful. Horn now appeals his conviction and sentence, arguing his attempt to withdraw his guilty plea was unsuccessful because he was provided ineffective assistance from his *conflict counsel*, too. In that vein, Horn takes issue with: (1) the fact that his appointed conflict counsel, prior to relating Horn's reasons for withdrawing his guilty plea due to his trial counsel's alleged ineffective assistance, informed the circuit court that Horn's reasons relating to his trial counsel's alleged ineffective assistance were either refuted by the record or supported only by Horn's recollection – a recollection Horn was unwilling to verify; and (2) the fact that his appointed conflict counsel did not otherwise ask the circuit court to exercise its discretion, per RCr[4] 8.10, to allow Horn to withdraw his guilty plea simply because Horn wished for a trial.

---

[4] Kentucky Rule of Criminal Procedure.

-3-

Due to this purported ineffective assistance of his *conflict counsel*, Horn argues this Court should, consistently with *Commonwealth v. Tigue*, "rewind this matter to the point in time when [Horn] had already entered his plea but before he was sentenced" to permit him to "again seek to withdraw his guilty plea" with "the assistance of counsel (other than the trial counsel he accuses of having acted ineffectively) and to be heard on his underlying claims." 459 S.W.3d 372, 390 (Ky. 2015). Stated otherwise, Horn wishes for another opportunity to "opt for a hearing" (in his words) and argue to the circuit court (for the same reasons as before, but minus his conflict counsel's qualifications of those reasons) that the inefficacy of his trial counsel entitled him to withdraw his guilty plea.

As explained below, Horn's arguments for withdrawing his guilty plea based upon the alleged inefficacy of his trial counsel were refuted by the court's record and thus patently frivolous. Horn is essentially faulting his appointed conflict counsel for refusing to unqualifiedly assert, at his behest, those patently frivolous arguments. However, attorneys do not render ineffective assistance by refusing to assert frivolous arguments on behalf of their clients. A motion to withdraw a guilty plea that is supported by only frivolous arguments does not merit a hearing. Further, while Horn's conflict counsel did not ask the circuit court to exercise its discretion to allow Horn to withdraw his guilty plea simply because Horn wished for a trial, doing so would have been redundant: Horn effectively did

so himself, and the circuit court considered and rejected his request. Accordingly, we affirm.

## BACKGROUND

As stated, the three reasons Horn offered for withdrawing his guilty plea based upon the alleged inefficacy of his trial counsel were either refuted by the record or supported only by Horn's recollection – a recollection Horn was unwilling to verify. Horn omits discussing these points in his brief. However, to properly frame our analysis and disposition of this matter, a discussion is necessary. The facts relevant to each of Horn's reasons set forth above will be addressed, in turn, in part "I" below. In part "II," we will discuss the facts relevant to how, in Horn's view, his appointed conflict counsel provided him ineffective assistance in his bid to withdraw his guilty plea.

## I.

**1. Horn was charged and indicted for bail jumping in the first degree *before* trial counsel from the Department of Public Advocacy was appointed to represent him.**

On May 4, 2022, a Boone Circuit Grand Jury indicted appellant Jerry Horn on one count of strangulation in the first degree. As stated at the onset, this was the sole charge in 22-CR-00194, the first of Horn's two criminal proceedings at issue in this matter. Horn pled not guilty and was released on bail, a condition that obliged him to "make all scheduled court dates." At a subsequent hearing of

June 8, 2022, and in the presence of Horn and his counsel, the circuit court later scheduled a court date (*i.e.*, pretrial conference) for July 6, 2022. However, on July 6, 2022, Horn failed to appear in Boone Circuit Court for his scheduled pretrial conference and could not be located. Due to his nonappearance, the circuit court issued a bench warrant for his arrest. The warrant was served, and Horn was arrested, on July 23, 2022. On September 28, 2022, Horn's private defense attorney, Wilbur Zevely, moved to withdraw from further representing Horn due to Horn's nonpayment of his bill.

When Horn was later brought before the circuit court on October 5, 2022, Horn explained he had failed to appear on July 6, 2022, because: "I was on a job, I got, I just missed court, it was an accident"[5] and "a total mistake."[6] Horn opposed Zevely's motion to withdraw, explaining he intended to eventually pay him. He also moved to modify the terms of his bond. The Commonwealth opposed reinstating Horn's original bond, adding that due to Horn's July 6, 2022 nonappearance, "a bail jumping [charge] is coming."[7] The circuit court denied Horn's motion to modify his bond. The circuit court also granted Zevely's motion

---

[5] 10/5/22 hearing at 9:04:51-9:04:55.

[6] *Id*. at 9:06:30-9:06:32.

[7] *Id*. at 9:07:30-9:07:32.

to withdraw, and set the next pretrial conference hearing for October 19, 2022, to provide Horn two weeks to secure replacement counsel.

At the October 19, 2022 hearing, Horn appeared without counsel. The Commonwealth explained that "a bail jumping charge is in the works and is coming."[8] The circuit court informed Horn it could consider whether he qualified for appointment of counsel to assist him, to which Horn replied that he "can't go to court with a public defender," and he would prefer the court instead grant him additional time to secure private counsel. The circuit court granted Horn another two weeks to do so, setting the next pretrial conference hearing for November 2, 2022.

At the November 2, 2022 hearing, there was some initial confusion regarding whether Horn was represented by counsel. On, or shortly before, the date of that hearing, Horn had submitted a financial statement, affidavit of indigency, and request for counsel; a public defender appeared with him at the hearing; but no order appointing counsel had been entered, and Horn again insisted he "can't go to trial with a public defender." Addressing this concern, the Commonwealth reemphasized that "Mr. Horn did miss court, Mr. Horn will be, at the next grand jury, indicted on bail jumping charges,"[9] and that "at this point, if he

---

[8] October 19, 2022 hearing at 3:45:40-3:45:42.

[9] November 2, 2022 hearing at 2:04:54-2:04:59.

does not want a public defender, considering that he has not had an attorney, judge, it's getting to the point where we need to have a *Faretta*[10] hearing or we need to have counsel in place."[11]

The circuit court asked Horn if he was requesting appointment of counsel. Horn responded that he was not requesting it. The circuit court accordingly granted Horn another two weeks to secure counsel, setting the next pretrial conference hearing for November 16, 2022, adding that if "there's no change on representation status and you still don't want a public defender, I'm gonna set it for a *Faretta* hearing, which means you would be representing yourself if I approve that. Otherwise, I may appoint counsel whether you want it or not, and we may have to go forward."

On November 15, 2022, a Boone Circuit Grand Jury indicted Horn on one count of bail jumping in the first degree. As stated at the onset, this was the sole charge in No. 22-CR-00703, the second of Horn's two criminal proceedings at issue in this matter. The next day, at the November 16, 2022 hearing, Horn appeared without counsel. He explained his intention was to eventually pay Zevely and have Zevely represent him again. Because Horn continued to express no interest in representing himself, the circuit court determined a *Faretta* hearing

---

[10] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[11] November 2, 2022 hearing at 2:05:26-2:07:58.

was inappropriate. It provided Horn another week to secure counsel, scheduling the next pretrial conference hearing for November 23, 2022.

The November 23, 2022 hearing was ultimately both a pretrial conference for No. 22-CR-00194 and Horn's arraignment hearing for No. 22-CR-00703. Horn appeared without counsel again. Whereupon, after placing Horn under oath and ascertaining his eligibility, the circuit court appointed counsel for him – a public defender who happened to be in the courthouse that day – but qualified the appointment by assuring Horn he could still hire private counsel at any time. Thereafter, by and through appointed counsel, Horn acknowledged receipt of his indictment in No. 22-CR-00704 and pled not guilty. A typographical error in Horn's indictment in No. 22-CR-00704 later necessitated a superseding indictment, which was filed on December 6, 2022. Horn's original indictment had mistakenly alleged Horn had committed the offense of bail jumping in the first degree on November 15, 2022 (*e.g.*, the very date of that indictment); the superseding indictment clarified that Horn allegedly committed that offense on July 6, 2022.

In short, the record refutes Horn's suspicion and conjecture that he was charged and indicted for bail jumping in the first degree because trial counsel from the Department of Public Advocacy was appointed to represent him. Horn was appointed a public defender after he had already been charged and indicted

with that offense. And, well before the Commonwealth charged him with that offense, the Commonwealth had already expressed, repeatedly, that it intended to do so.

**2. Horn was repeatedly informed *prior* to accepting the plea agreement that he was going to be tried for bail jumping and strangulation in separate trials, and that an acquittal of the strangulation charge would *not* void the bail jumping charge.**

During a March 14, 2023 pretrial hearing, the circuit court scheduled *one* of Horn's jury trials for March 30, 2023. Horn's trial counsel, the Commonwealth, and the circuit court discussed in Horn's presence that while both Nos. 22-CR-00194 and 22-CR-00703 would be kept together for case management purposes, only the bail jumping charge of No. 22-CR-00703 would be the subject of the March 30, 2023 trial. His strangulation charge would only be the subject of a pretrial conference on that date and would be tried separately later.[12]

On March 30, 2023, prior to jury selection, the circuit court held a hearing to resolve several outstanding issues. At that time, and at the urging of Horn's trial counsel, the circuit court clarified for Horn that he was only going to be tried that day for bail jumping; that he would be tried for strangulation separately on a later date; and that an acquittal of his strangulation charge would

---

[12] March 14, 2023 hearing at 9:40:30-9:41:30.

not void his bail jumping charge.[13]  Afterward, Horn indicated the circuit court's

explanation had resolved his misunderstanding about those points.  And that, in

---

[13] Relevant to these points, the following exchanges occurred between Horn, the attorneys, and the circuit court during the March 30, 2023 pretrial hearing:

> COURT:  Do you have any objections with your attorney's work or services?
>
> HORN:  I thought we was running these trials together.  I thought the charges were together, to be honest.  I thought the jury would hear the whole story.
>
> TRIAL COUNSEL:  Your honor, will you clarify for him, this has been a, a sticking point in our relationship.  He believes that the strangulation and bail jumping are tried together.  And I have not been able to –
>
> COURT:  Generally, they're not tried together.
>
> HORN:  Yes, sir.
>
> COURT:  And, you know, there's reasons for that.  It could be prejudicial to you to have them tried together.
>
> HORN:  Okay. I, I take your knowledge on it.  I don't know.
>
> COURT:  And the Commonwealth has moved to bifurcate or separate those trials.  And, based on the body of law and the reasoning and the types of charges, you know, I allowed that to be separated.  So, it wasn't something that was fought heavily, but it is something that is not at all uncommon.

March 30, 2023 hearing at 8:53:25-8:54:25.

> COURT:  Let me just explain something.  This, this charge, the bail jumping, is solely related to your not appearing while you were out on bond, and the reason for your not appearing while you were out on bond.  It doesn't relate to the other charge.  And, as a matter of fact, even if you were to be found not guilty on the other charge, you could still be guilty of jumping bond, jumping bail.  Do you know what I'm saying?  Because when you're released on bail, there's obligations.  And the General Assembly of this state has found it to be a felony when someone does that, if you did.  I'm not saying, you know –
>
> HORN:  Sure.  I didn't do it on purpose –
>
> COURT:  I understand.  But it helps, I just want to make sure that you are following why the two charges are separate, and even if the other one were to be

-11-

turn, convinced the Commonwealth to re-extend its plea offer to Horn[14] – a plea offer Horn had previously rejected. Horn then expressed his willingness to accept the Commonwealth's plea offer, which ultimately became the plea agreement at issue in this case.

In short, the record refutes any notion that Horn had reason to believe, when he accepted the plea agreement at issue in this matter, that he was going to be tried for bail jumping and strangulation in a single trial, or that an acquittal of the strangulation charge would have voided his bail jumping charge.

_____

dismissed, it doesn't resolve the issue of bail jumping. Because that's a separate law.

HORN: Yeah, I wasn't aware of that.

COURT: And that will be tried here today, but that's –

HORN: Yes, sir.

*Id*. at 8:56:20-8:57:20.

[14] To this point, the Commonwealth stated:

Your honor, the fact that we've prepared and there's a jury outside, my inclination would be to keep [the plea offer] withdrawn. However, given some of the misunderstandings that Mr. Horn had stated, the Commonwealth would keep that offer on the table.

*Id*. at 8:59:24-8:59:44.

**3. The record demonstrates only that Horn pled guilty to bail jumping in the first degree because it was his voluntary choice to accept the Commonwealth's plea offer and admit his guilt – not because his trial counsel told him he had "admitted to guilt."**

When Horn attempted to withdraw his guilty plea on May 3, 2023, he informed the circuit court that he had accepted the Commonwealth's plea offer on March 30, 2023, because he "felt" like his trial counsel had told him, while they were before the circuit court during the March 30, 2023 hearing, that he had "admitted to guilt." However, he also acknowledged that he had reviewed the footage of the March 30, 2023 hearing and his plea colloquy that had followed, and that he had been unable to find any indication that his trial counsel had ever told him anything to that effect. Moreover, Horn was unwilling to swear under oath or even trust his own recollection that his trial counsel had ever told him anything to that effect. Horn could only suggest that something which might have supported what he possibly remembered may have been omitted from the circuit court's video record.[15]

All that Horn has ever offered on this point is his own self-serving conjecture and suspicion. True to what he himself represented to the circuit court on May 3, 2023, nothing in the circuit court's record supports that Horn's guilty

---

[15] The specifics of what Horn represented to the circuit court during the May 3, 2023 sentencing hearing regarding these points are set forth below in part "II" of this Opinion.

plea was the product of something other than Horn's own voluntary decision, or that his trial counsel told him he had "admitted to guilt" or anything else to that effect while the two of them were before the circuit court on March 30, 2023. The record also refutes that Horn was coerced in any way. When the circuit court initially questioned Horn during the March 30, 2023 preliminary hearing about whether the Commonwealth had previously extended a plea offer to him, Horn explained at length that it had been his own choice to reject it.[16] After the circuit

_____

[16] In the following exchange, Horn indicated his reasons for previously rejecting the Commonwealth's plea offer were founded, at least in part, upon his misunderstanding that an acquittal of his strangulation charge would have voided his bail jumping charge:

COURT: Were there any plea offers made in this case?

TRIAL COUNSEL: Yes, your honor.

COURT: And what was the terms?

COMMONWEALTH: Your honor, a plea to the bail jumping, two years to serve, for the dismissal of the strangulation.

COURT: Okay. And did you receive that offer?

HORN: I did, sir.

COURT: Okay. And was it your decision to reject that offer?

HORN: You know, it's, uh –

TRIAL COUNSEL: Did you decide, or did I decide?

HORN: No, I mean, I decided it, you know, for me. I decided to because, you know, I'm innocent. But at the same time, it's like, I thought about it. Maybe I should, but it's, it's, if I take that charge, I feel like, like I'm admitting to something I'm guilty of and I'm really not guilty. You know, but at the same time, the charge [of strangulation] leads to this charge [of bail jumping]. So, if, um, it wasn't for this charge that I got, I would not have a, a bail jumping charge.

-14-

court clarified Horn's misunderstandings,[17] Horn voiced his acceptance of the Commonwealth's re-extended offer.[18]

During his ensuing *Boykin*[19] colloquy later that morning, Horn then confirmed that he and his trial counsel had discussed his charges, his possible defenses, the possible penalties, and his other options should he choose to defend against the charges. Horn stated he was satisfied that he fully understood his legal situation and what it meant to enter the guilty plea. The circuit court informed Horn of the constitutional rights he would be waiving by pleading guilty, and Horn acknowledged his understanding. Horn indicated that he was not under the influence of any substances or suffering from any condition that would impair his ability to think or reason, had not been influenced or forced in any way to enter the guilty plea against his will, and that entering the plea was his informed choice and in his best interest. Horn accurately recited the substance of his plea agreement. Horn assured the court that no one, including his trial counsel, had made any kind

---

It would never have happened. That's kind of the way I took it. And I'm not innocent, I mean, I'm innocent on this whole scenario, but at the same time it's like, you know, with the bail jumping thing, I missed court. And I mean –
TRIAL COUNSEL: Okay, stop talking.

March 30, 2023 hearing at 8:55:00 – 8:56:13.

[17] *See* Note 13.

[18] March 30, 2023 hearing at 9:02:38.

[19] *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

of promise that differed from that agreement. Horn acknowledged that he had read and understood the guilty plea forms before signing them; had been given ample time to review them; and had signed them of his own free will. Horn informed the circuit court that he was satisfied with his trial counsel's advice, service, and work on his case and that there was not anything left undone that he wanted his trial counsel to do that would make a difference to him in the decision to plead guilty. Horn's trial counsel affirmed that in her opinion Horn's plea of guilty was knowing, voluntary, and consistent with her advice.

The trial court then asked Horn if he was pleading guilty to bail jumping in the first degree, and if he was doing so because he was truly guilty and for no other reason. Horn answered in the affirmative. It asked Horn if he had read and understood the indictment. Horn answered in the affirmative. The court then questioned Horn regarding the elements of bail jumping in the first degree, whereupon Horn admitted knowing he was out on bail on July 6, 2022; that he had known at all relevant times that he had been required to appear for court on July 6, 2022; and that he had missed court that day. Horn added he had missed court because, "I just got my days, you know, just confused."[20] Horn's statement then led to the following exchange:

> COURT: Where I was getting concerned or hung up is it sounded like you were saying, you know, that you had

[20] March 30, 2023 hearing at 9:32:33-9:32:36.

reason to believe there was a different day, or you were just confused. And if that's the case, and you have defenses, I don't want you to plead guilty to something that, you know, you're disputing or don't believe happened or don't believe is true.

HORN: Sure.

COURT: If you, I mean, based on what you've committed there, I believe that the facts would meet the elements of the crime that the General Assembly passed. Are you satisfied with that allocution?

COMMONWEALTH: Yes, your honor.

COURT: Okay. Mr. Horn, is there anything further you want to say?

HORN: Um, not really. I just, you know. Get it over with.

COURT: Okay. Defense counsel, is there anything further you want to?

TRIAL COUNSEL: No, your honor.

March 30, 2023 hearing at 9:33:35-9:34:24.

Horn states on appeal that he "does not raise issues surrounding the colloquy[.]"[21] Consistent with that premise, Horn makes no contention that the circuit court erred by ultimately concluding, based upon what is set forth above, that his plea was knowingly, voluntarily, and intelligently made; that he was ably represented by competent counsel; that he was satisfied with his counsel's service;

---

[21] Reply brief at 2, Note 1.

and accordingly, that his guilty plea to bail jumping in the first degree was proper for the circuit court to accept.

In short, the record does not support that Horn was pressured by his trial counsel into accepting the plea agreement, and his own statements refute any such notion.

**II**.

We will now discuss the facts relevant to how, in Horn's view, his appointed conflict counsel provided him ineffective assistance in his bid to withdraw his guilty plea. Horn contacted his trial counsel a few days after entering his guilty plea and informed her that he wished to withdraw it. Because Horn's request to withdraw from the plea agreement that his trial counsel had helped negotiate for him raised potential conflict of interest issues, the Department of Public Advocacy assigned conflict counsel to assist Horn in moving to withdraw his guilty plea. Later, at Horn's May 3, 2023 sentencing hearing, Horn's conflict counsel assisted Horn in presenting his motion to the circuit court – to an extent.

First, as set forth below, Horn's conflict counsel indicated Horn was pressing him to make arguments to the circuit court that he, conflict counsel, did not believe were supported by the facts – either because the arguments were squarely contradicted by the court's record, or because the only support Horn

-18-

offered for the arguments derived from Horn's own recollection, which Horn was

unwilling to verify:

> CONFLICT COUNSEL: There is, your honor, a reason potentially why sentencing cannot occur today. And if I can have a moment for that?
>
> COURT: You may.
>
> CONFLICT COUNSEL: Um, your honor, I was not the original attorney on this. He had pled guilty, I believe, March 30th, and between March 30th and today, he had, um, informed his attorney, Ms. Heather, Ms. Heather with the public defender's office, that he wanted to withdraw his guilty plea. So, they appointed me, um, and I went and spoke with Mr. Horn, I spoke, I spoke to him four times in the last few weeks about this. I asked him what his basis was for, for the motion to withdraw the guilty plea.
>
> Um, quite frankly, a lot of the issues that he was talking about, um, probably revolve more around ineffective assistance of counsel or any type of postconviction motions, not a motion to withdraw a guilty plea. Um, based upon the conversations I had with him, I pulled the tape, or pulled the JAVS video from March 30th, um, to confirm some of the stuff he had, and quite frankly some of the stuff that was on the, the JAVS video did not pan out in the way that he said they would. So normally what I do is I file the motion to withdraw the guilty plea and put the factual basis behind it. Um, and as an attorney, um, as an officer of the court, I could not do that because it was inconsistent with what was on the video.
>
> Um, so I went and talked to Mr. Horn to, um, to kind of give him, and I showed him the video. I mean, we went through all of it. And I think, um, what I did after that is I prepared an affidavit, I was going to attach it to my motion to withdraw the guilty plea, right here, and I went

to go to sign it yesterday, I had a notary to go sign it in the jail yesterday, and he was in a position where he didn't feel comfortable signing it because he didn't want to put his name on something without having a more thorough investigation. I told him that we have to have some type of resolution today, if the court doesn't grant him a continuance on it, um, and, um, he wanted me to maintain filing a motion, which I told him I was uncomfortable doing simply because the facts that were in there did not pan out as he stated those.

Um, I told him basically we have three options. Um, he can, I told him I'd bring these, uh, concerns he has to the court, um, and let the court make the decision. And I told him he could sign the affidavit. Um, the court can go forth with sentencing. Or if he wanted to, he could represent himself on that, because I don't feel like I can ethically go forward as far as what he's saying I should be doing.

Um, he just told me just now, and that's what he was very thoroughly telling me to do when the court was asking some questions, to ask for a continuance, ask for a continuance, ask for a continuance. I've had quite a few conversations with him, I don't know what the continuance would serve, based upon the conversations I've had with him, because I believe Mr. Horn, the information I have from him, is inconsistent with what's on the record. Um, but I also believe that what he wants to do is he wants to continue to investigate potentially 60.02 or 11.42 issues. Um, and I told him that's not what the purpose of this is. But I told him I'd put it before the court and let the court decide, I'll do whatever the court ordered me to do, but I just wanted the court to be aware that that's where we're at. I would've filed a motion, but I just could not sign my name to it.

COURT: I understand. Okay. So, I gather your client wants to withdraw his guilty plea.

-20-

CONFLICT COUNSEL:  Yes.

COURT:  I get the substance of what you're saying. What his reasons and issues are, if you're, um –

CONFLICT COUNSEL:  And if I could just say one additional thing.  Most of the time, you know, the defense attorney has the ability to make strategic decisions.  I think in this one particular instance, um, it's not necessarily my job, my role to sit there and say, like, be the gatekeeper of whether this information gets before the court.  But, I believe it stops at this point where the information I have on the record is inconsistent with what he wants me to sign, and that's why I'm bringing it forward to the court, because I want to make the court aware of his concerns, but also tell the court that I, I can't sign the motion.

May 3, 2023 hearing at 9:32:50-9:36:28.

After conflict counsel made these qualifications, and after he assured the court that he had appropriately investigated the substance of the arguments Horn was pressing him to make, the circuit court asked conflict counsel to share Horn's reasons for wanting to withdraw his guilty plea.  As previously discussed at length, Horn's arguments, which alleged ineffective assistance from his trial counsel, were that:  (1) he believed he would not have been charged with bail jumping in the first degree if he had not been represented by trial counsel from the Department of Public Advocacy; (2) he believed, when he accepted the plea agreement, that he was going to be tried for bail jumping and strangulation in a single trial, and that an acquittal of the strangulation charge would have voided the

-21-

bail jumping charge; and (3) he felt pressured into accepting the plea agreement

because, shortly before he had accepted it, his trial counsel may or may not have

told him he had "admitted to guilt." Conflict counsel described these points as

follows:

> CONFLICT COUNSEL: Okay. So, there's basically, the basis is, is revolving around three things. Number one, Mr., he originally had Mr. Zevely on a strangulation. He failed to appear for court, at least according to the allegations of what the Commonwealth is, he failed to appear in court in June [sic]. Um, sometime after that, Mr., Mr. Zevely had withdrawn. I believe he filed a motion in September and I think the court had a hearing on it in early October. Um, after that, he was indicted on, on bail jumping. Um, and then the public defender's office gets involved. My understanding is that he believes that he was only charged with the bail jumping because the public defender's office got involved, and that if Mr. Zevely would have been involved, all of this would have been dismissed.
>
> The other issue is, is that when he was originally brought before the court, um, the court had said we're gonna keep these together, I believe the court said that for scheduling purposes, not for trial purposes. You know, we're keeping the bail jumping and the, and the strangulation together. Um, Mr., he had believed that they were going to be tried on the same day. And when I listened to the video on 3/30, that was actually what I was concerned, he thought we were in trial for both the strangulation and, and, and the bail jumping. Um, the court as well as the Commonwealth and his defense counsel then told him this was always going to be about bail jumping. Um, and he believes that, um, there was some collusion, potentially, and I don't know if he's going that far, between the public defender's office and the

Commonwealth's attorney for charging him with, with bail jumping.

Um, more importantly, you know, this is the one where we really parted ways. Because when I went and showed the video to him, uh, and I showed him the JAVS video. He believes that there was material aspects taken out of that. He fears that there were material aspects taken out of the JAVS video, that [trial counsel] had said something that was not on the record, and that, and that an investigation needs to be done into the record to see whether it was "spliced."

COURT: Um.

CONFLICT COUNSEL: He's actually saying something. I don't know if the court wants to hear from him. But that's, that's kind of where we're at. And, and I don't want him to not have an opportunity to speak today. Um, if the court wants to hear him, but I'm, I'm classifying this as closely as I can. And, and if the court wants to see his viewpoint and see if it differs, I, I welcome the court to do that.

May 3, 2023 hearing at 9:37:14-9:39:37.

The circuit court then informed Horn that he had a right to be heard; cautioned Horn that the hearing was being recorded and that anything Horn said could be used against him; and then asked if there was anything else Horn wanted the court to consider regarding withdrawing his guilty plea. Horn then provided the following relevant elaboration, stating, in sum, that something which might have supported what he possibly remembered (*i.e.*, that his trial counsel had told him prior to his acceptance of the Commonwealth's plea offer that he had

-23-

"admitted to guilt") may have been omitted from the circuit court's video record; and asking, in sum, for the circuit court to otherwise permit him to withdraw his guilty plea simply because he now wished for a trial:

> HORN: When me and [trial counsel], when we was in trial that day [March 30, 2023], when we were getting ready to do our, the people was walking in, we was going to pick them, and we was talking, you was asking me questions, and there was a, I was ready for trial. But at that point, I was speaking, and, and I said something about "admit," and you know, something of that nature, and I misunderstood a word, but that's kind of where it went with that. I kinda thought it was something different was said. And I went back and looked at the video and it wasn't there. So, I mean it was, it was kinda, it disturbed me a little bit. And I, and I, I'm not, I'm not saying that I heard anything on it that wasn't there, but I'm just, something wasn't, it just –
>
> COURT: What, what is it that you're contending was not there?
>
> HORN: Um, when I was, when I was speaking to you, something about admitting guilt. Because I was talking and we, I was kind of [unintelligible] I want a trial, you know. And my mind, I was, I was thinking, I don't know, apparently, I'd mentioned something about guilt, I'm speaking and I was going a little too fast, and I had mentioned something about guilt. As I was saying, I'm not guilty of this, I've always said I've been innocent on this, on both of them to be honest. Bail jumping in the second, possibly,[22] but not first degree. But due to the,

---

[22] As indicated, on May 3, 2023, while Horn was before the circuit court and personally elaborating upon why he believed his guilty plea should be rescinded, Horn also asserted he should "at most" have been charged with bail jumping in the *second* degree, as opposed to bail jumping in the *first* degree. It is unclear how he arrived at that conclusion. In any event, this is not a point he has continued to press on appeal, nor does it have merit. "A person is guilty of bail jumping in the second degree when, having been released from custody by court order, with

and, and when I was mentioning that, I had, I had said it to the extent, but, I remember [my trial counsel] had spoke up and, and it's circumstantial, and this is just, this is just a comment that I thought maybe she had mentioned, that "You just, you know, you admitted to guilt." And maybe that's just my [conflict counsel] saying that. I'm not, I'm not putting it on the record or anything, like, I'm accusing no one. I just, that's what I kinda felt. And it, and it, and it threw me for a loop and it pushed me, I just kind of did feel, I just felt pressured on it. And I'm not trying to push the issue, you know, I just, I wanted a trial. I wanted a trial to prove my innocence. I wanted to prove my innocence and I know I can. And it's just, you know, I'm not a lawyer by any means, I go by what you guys do because this is you guys' profession, not mine. But I know basic stuff and I just, I just, I'm not guilty, man. I'm just, pardon me, I didn't mean "man." But I'm not guilty, sir. I just feel, I felt like, I just, I'm not guilty. I just, if I could, you know.

COURT: Well –

HORN: And your honor, I just didn't, I. Go ahead, I'm sorry.

COURT: Well, that's okay. If you want to say more, you certainly can. That's why I'm here.

HORN: Sure. Um, thank you. That's it. That's it. I don't want to upset you or the court at all.

May 2, 2023 hearing at 9:40:29-9:42:52.

---

or without bail, upon condition that he will subsequently appear at a specified time and place in connection with a charge of having committed a *misdemeanor*, he intentionally fails to appear at that time and place." KRS 520.080(1) (emphasis added). Horn was charged with bail jumping in the first degree because he failed to appear in court while out on bail for a *felony* charge. *See* KRS 520.070(1).

The circuit court then considered the breadth of what Horn and his conflict counsel had presented in support of withdrawing Horn's guilty plea, and determined – based upon its own recollection of the record – that what had been presented was insufficient for that purpose:

> COURT:  You're not upsetting me, and there may be something in your memory that didn't get captured on the recording system.  That would be highly unusual.[23]
>
> HORN:  Sure.
>
> COURT:  Um, we did have a jury here.
>
> HORN:  Sure.
>
> COURT:  Jury selection had begun, and, um –
>
> HORN:  Maybe it could've, oh, I'm sorry.
>
> COURT:  I think, my recollection of it is, we didn't actually begin voir dire, but the jury had been called in and, because when I was asking you questions to make sure that you wanted the trial, that things had been discussed, whether there were offers.  My recollection is, is that when the offer was being discussed, you indicated potential interest in that offer, and the Commonwealth reopened that offer, and I moved this to the other courtroom.  I would expect that if tapes were received, they would have been from both recording systems.
>
> HORN:  Sure.

---

[23] As indicated, this Court has reviewed the JAVS video records from March 30, 2023.  Nothing suggests any part of those records was improperly deleted or altered.  Just as Horn was unwilling to verify any assertion to the contrary below, he makes no assertion to the contrary on appeal.

COURT: Um, so regardless, I have a memory of what happened.

HORN: Yes, sir.

COURT: And I never let anyone plead guilty if they're asserting innocence or they're asserting defenses.

HORN: Sure.

COURT: And you had requested a continuance of the trial at the eleventh hour that I denied because of the circumstances and what had happened in the case and that it needed to be tried and it had to do with somebody that you were trying to get a ride with, that we had set it for the very next day as well and there was still no appearance. And my recollection is that you did recite sufficient factual bases to meet each element of the crime of bail jumping.

One of the big issues that I think you had was, is that if the first charge was ultimately going to be dismissed, that you didn't think that you should be convicted of bail jumping. And whether that's um, something that I would sympathize with or that a jury would sympathize with, I don't know. The big question is, in the ultimate analysis, it doesn't matter because the question of what the policy is under the statute is pretty clear by the text. If you have, if you have a court date and you're out on bail, you have to make that court date. If you do not make that court date, you know about that court date, especially when we set it for the next day, there's, you gotta be there, it's a separate question. So, we proceeded, I took your plea, I accepted your plea, that's my recollection of it. Now, whether internally you had problems with it or there were statements between you and your counsel that wasn't captured, I didn't find that the plea was anything but intelligently, knowingly, and voluntarily made. Commonwealth, what's your position?

COMMONWEALTH: Your honor, I agree with the court. In this particular case, I think the court went above and beyond to make sure that Mr. Horn understood, um, and discussed issues that the court wouldn't normally discuss with a defendant, to make sure he truly understood. And the Commonwealth showed up ready for trial, and we reopened the offer because he explained to the court that at that time he was confused about the exact [unintelligible] issue. So, um, we reopened that in court because he thoroughly understood. And so, I do believe the plea was knowing and voluntary, and I believe we should proceed with sentencing today.

COURT: Mr. Horn, I, I appreciate your position. I don't think there's a basis to withdraw the guilty plea. Um, if I'm wrong, there is a Court of Appeals, and wiser minds than mine might tell me I'm wrong. I, I want to make sure that everyone is fully informed and I'm very reticent to ever adjudicate anyone guilty if I believe that they've given any grounds for a defense, and, because I took an oath, too. And I don't believe that's what's at issue here. So, I'm gonna deny the motion, your oral motion, to withdraw the guilty plea.

May 3, 2023 hearing at 9:42:53-9:46:53.

The circuit court stated it intended to proceed with sentencing absent "any legal reason why sentence should not be imposed at this time." *Id*. at 9:48:15-9:48:21. Neither Horn nor his conflict counsel provided any other reason. The circuit court later sentenced Horn consistently with the terms of his guilty plea. These appeals followed.

**ANALYSIS**

We reiterate that Horn is making two species of ineffective assistance of counsel claims in these appeals: (1) Claims that focused upon the performance of his *trial counsel*, which he asserted in his three reasons for wanting to withdraw his guilty plea; and now (2) claims focused upon the performance of his *conflict counsel*. Recall, these are direct appeals, not collateral attack proceedings. With that in mind, we pause to explain:

> As a general rule, a claim of ineffective assistance of counsel will not be reviewed on direct appeal from the trial court's judgment, because there is usually no record or trial court ruling on which such a claim can be properly considered. Appellate courts review only claims of error which have been presented to trial courts. *Caslin v. Commonwealth*, Ky., 491 S.W.2d 832 (1973). Moreover, as it is unethical for counsel to assert his or her own ineffectiveness for a variety of reasons, KBA Op. E-321 (July 1987), and due to the brief time allowed for making post trial motions, claims of ineffective assistance of counsel are best suited to collateral attack proceedings, after the direct appeal is over, and in the trial court where a proper record can be made. This is not to say, however, that a claim of ineffective assistance of counsel is precluded from review on direct appeal, provided there is a trial record, or an evidentiary hearing is held on motion for a new trial, and the trial court rules on the issue. *Hopewell v. Commonwealth*, Ky., 641 S.W.2d 744 (1982); *Wilson v. Commonwealth*, Ky., 601 S.W.2d 280, 284 (1980).

*Humphrey v. Commonwealth*, 962 S.W.2d 870, 872-73 (Ky. 1998).

Here, the record thoroughly demonstrates what Horn's claims of "ineffective assistance" were against his trial counsel. His trial counsel did not assert her own ineffectiveness before the circuit court. Further, to the extent Horn takes issue with the performance of his conflict counsel, there is no dispute regarding what his conflict counsel did – or did not – do. Specifically, there is no contention Horn's conflict counsel inadequately investigated Horn's claims against Horn's trial counsel. Horn's conflict counsel apprised the circuit court that Horn's specific reasons for wanting to withdraw his guilty plea were essentially "ineffective assistance" claims regarding his trial counsel that may have been suited for collateral proceedings (*i.e.*, an RCr 11.42 or CR[24] 60.02 motion). The circuit court then asked Horn and his conflict counsel to present Horn's ineffective assistance claims; Horn and his conflict counsel did so in the manner set forth above; and, after fully considering Horn's ineffective assistance claims against his trial counsel, the circuit court made a ruling from the bench that they did not entitle Horn to withdraw his guilty plea. Consistently with the exception delineated in *Humphrey*, and under the specific circumstances presented, we deem Horn's ineffective assistance claims to be proper subjects of our review in these direct appeals.

---

[24] Kentucky Rule of Civil Procedure.

Defendants have a right to counsel under the Kentucky Constitution. KY. CONST. § 11. Our courts have adopted the two-part test, set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for evaluating whether the performance of counsel violates a defendant's constitutional rights. *See, e.g.*, *Tigue*, 459 S.W.3d at 383. In *Strickland*, the Supreme Court set forth a two-part test for evaluating whether the performance of counsel violates a defendant's rights under the Sixth Amendment of the United States Constitution. A defendant must first show that the performance of his or her counsel was "below an objective standard of reasonableness." *Strickland*, 466 at 688, 104 S. Ct. 2052. To avoid second-guessing trial counsel's strategic decisions, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S. Ct. 2052 (internal quotation marks and citation omitted). Accordingly, an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken.

The second condition that must be met for an ineffective-assistance-of-counsel claim to succeed is a showing that the counsel's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 691-92, 104 S. Ct. 2052. To

satisfy this condition, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S. Ct. 2052.

With that said, Horn's ineffective assistance claims against his *trial counsel* fail both prongs of the *Strickland* analysis and warranted no evidentiary hearing for the same reasons. To demonstrate entitlement to even an evidentiary hearing on his motion to withdraw his guilty plea, and to avoid having his motion summarily rejected as it was, Horn was required to present at least a "colorable" motion demonstrating that his plea was involuntary. *Zapata v. Commonwealth*, 516 S.W.3d 799, 802 (Ky. 2017) (citation omitted). A motion to withdraw a guilty plea is *not* at least colorable "if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true." *Id*. at 801-02. Likewise, "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that *in the face of the record* are wholly incredible." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 569 (Ky. 2006) (internal quotation marks and citation omitted) (emphasis added).

-32-

Here, Horn failed to present even a colorable motion for withdrawing his guilty plea. As extensively discussed above, the contentions of Horn's motion were not supported by facts. They were only supported, at most, by Horn's hazy recollection that he was unwilling to verify. Furthermore, even if his contentions could have been grounds for withdrawing his guilty plea, they were refuted by and "wholly incredible" in the face of the circuit court's own record. *Id.*; *see also id.* at 568 ("[I]f the information given by the court at the [plea] hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant.").

This, in turn, leads to Horn's claims of ineffective assistance regarding his *conflict counsel*. The relief Horn is asking this Court to provide him in this regard is unclear. As stated at the onset, Horn argues this Court should rewind this matter, to the point in time when he had already entered his plea but before he was sentenced, to permit him to again seek to withdraw his guilty plea with the assistance of counsel (other than the trial counsel he accuses of having acted ineffectively) *and to be heard on his underlying claims*. But, the circuit court *did* hear his underlying claims; Horn makes no contention to the contrary.

Horn instead takes issue that *when* the circuit court heard his claims, "counsel, without prodding, attempted to negate [his] claims in detail."[25]

In other words, it appears Horn is asking this Court to rewind this matter, to the point in time when he had already entered his plea but before he was sentenced, to permit him to again seek to withdraw his guilty plea with the assistance of counsel (other than the trial counsel he accuses of having acted ineffectively) and to be heard *again* (on his *same* underlying claims that the circuit court already rejected without a hearing) *but without his conflict counsel's prior commentary that Horn's claims were either refuted by the record or supported only by Horn's recollection – a recollection Horn was unwilling to verify.* That is the only discernable goal of Horn's appeals.

That would also be an exercise in futility. If Horn is asserting things might have worked out more favorably for him if his conflict counsel had hidden or obfuscated the facts of record from the circuit court while presenting the motion to withdraw his guilty plea, he is incorrect: Horn was required to support his motion with specific facts; the specific facts relevant to his motion were patently of record; and the circuit court was perfectly capable of taking judicial notice of its own record – and of disregarding Horn's unsupported or refuted characterizations

---

[25] App. Br. at 8.

of its record – without conducting any hearing at all.[26] In fact, the circuit court took judicial notice of its own record when it denied his motion.

Moreover, in the context of moving to withdraw a guilty plea, this Court has explained that an attorney should *not* make arguments to the trial court that he or she does not believe are supported by the facts. *See Sturgill v. Commonwealth*, 533 S.W.3d 204, 210 (Ky. App. 2017). Doing so would be unethical; and "the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *United States v. Cronic*, 466 U.S. 648, 656-57 n.19, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

This is not, as Horn insinuates throughout his briefs, an instance where an attorney either refused to adduce colorable evidence in support of his client's position or divulged his client's confidential information to the court. Horn had no evidence; and his conflict counsel at most only divulged (1) what the circuit court presumptively knew already (*i.e.*, that the record refuted Horn's claims), and (2) what Horn himself conceded to the circuit court on May 3, 2023

---

[26] "[I]t is a well-established principle that a trial court may take judicial notice of its own records and rulings, and of all matter patent on the face of such records, including all prior proceedings in the same case." *M.A.B. v. Cabinet for Health & Fam. Servs.*, 456 S.W.3d 407, 412 (Ky. App. 2015).

-35-

(*i.e.*, that Horn did not know if the record supported his claims, and that he was unwilling to sign an affidavit or otherwise put anything "on the record" indicating that it did). Horn was not prejudiced.

Nor, for that matter, was Horn prejudiced by his conflict counsel's failure to ask the circuit court to exercise its RCr 8.10 discretion to simply permit him to withdraw his guilty plea. Horn effectively made that request on his own during the May 3, 2023 hearing. It is unclear what, if anything, his conflict counsel could have added to his request. The circuit court refused his request because it was unwilling to entertain anything other than a "legal reason why sentence should not be imposed." And the circuit court's determination (supported by substantial evidence as it was here) that Horn's guilty plea was voluntary was reason enough for the circuit court to deny Horn's motion to withdraw that plea. *See, e.g.*, *Williams v. Commonwealth*, 229 S.W.3d 49, 53 (Ky. 2007) (declining to pronounce a standard restraining our trial courts' discretion in ruling on a motion to withdraw a guilty plea that was voluntarily entered).

## CONCLUSION

Substantial evidence supported the circuit court's conclusion that Horn's guilty plea was voluntary. The record demonstrates Horn's claims of ineffective assistance of counsel are meritless. Accordingly, we affirm.

ALL CONCUR.


BRIEFS FOR APPELLANT:        BRIEF FOR APPELLEE:

Erin Hoffman Yang            Russell Coleman
Frankfort, Kentucky          Attorney General of Kentucky

                                     Matthew R. Krygiel
                                     Assistant Attorney General
                                     Frankfort, Kentucky